**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NELSON PIZARRO,                       :
                                    Civil Action No. 04-6399 (JBS)
       Petitioner,    :

       v.              :   **OPINION**

THE FEDERAL BUREAU OF PRISONS,:
et al.,
       Respondents.   :


**APPEARANCES:**

Petitioner pro se                  Counsel for Respondents
Nelson Pizarro                     Dorothy Donnelly, Esquire
#40312-053                         Asst. United States Attorney
FCI Fort Dix Camp               402 East State St., Room 430
P.O. Box 1000                    Trenton, NJ 08608
Fort Dix, NJ 08640

**SIMANDLE**, District Judge

    Petitioner Nelson Pizarro, a prisoner currently confined at the Federal Correctional Institution Camp at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The respondents are the Federal Bureau of Prisons and Warden John Nash.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.   BACKGROUND

This matter involves the proper calculation of Petitioner's release date under two concurrent sentences imposed on different dates under two different sentencing acts.

On November 16, 1993, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 96-month term of imprisonment, with five years of supervision to follow, for Conspiracy to Distribute heroin, in violation of 21 U.S.C. § 846 (the "1993 conviction"). The date of the offense was July 23, 1991. This sentence was computed to begin on November 16, 1993, in accordance with the Sentencing Reform Act, which was in effect at the time of the offense. Petitioner was released on September 18, 1998.

While under supervision under the 1993 conviction, on September 24, 2001, Petitioner committed the offenses of Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i)(ii) and (a)(2), and Criminal Forfeiture, in violation of 18 U.S.C. § 982(a)(1). For these offenses, on June 9, 2004, Petitioner was sentenced in the U.S. District Court for the District of Puerto Rico to an 18-month term of imprisonment with three years of supervision to follow (the "2004 conviction"). The sentence for the 2004 conviction was imposed pursuant to the Prison Litigation Reform Act, in effect as of the date of the offense, and was computed to begin on the date imposed, June 9, 2004.

Thirty-six days later, on July 15, 2004, Petitioner was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a 24-month term of imprisonment for violation of supervised release on the 1993 conviction.  This sentence was ordered to run concurrently with the 18-month sentence on the 2004 conviction, with credit for time served, and was computed to begin on July 15, 2004.  Because this sentence relates back to the 1993 conviction, it is governed by the Sentencing Reform Act in effect on the date the original offense was committed.

With respect to the sentence on the 2004 conviction, which was imposed and begun on June 9, 2004, the BOP gave Petitioner credit for 263 days of time served from September 17 through 18, 2003, and from September 22, 2003 through June 8, 2004.  This sentence was deemed satisfied via the accumulation of 70 days of good time credits on January 9, 2005.

With respect to the sentence for violation of supervised release, which was imposed and begun on July 15, 2004, the BOP gave Petitioner credit for time served of 263 days, the same 263 days for which Petitioner was given credit on the 2004 conviction, but did not give Petitioner credit for the 36 days served from June 9, 2004, through July 14, 2004, when Petitioner was in custody on the 2004 conviction.  Petitioner's projected release date, via the anticipated accumulation of 94 days of good time credits, is July 22, 2005.

Petitioner has filed this Petition for writ of habeas corpus challenging the projected release date of July 22, 2005, and arguing instead that his projected release date should be June 16, 2005. Petitioner contends that his two sentences, imposed under two different sentencing acts, should have been aggregated in such a manner that once the 18-month sentence on the 2004 conviction was satisfied his remaining sentence would consist of six-months less any good time credits he would accumulate during that period (January 9, 2005, plus six months equals July 9, 2005, less 23 days good time credits equals June 16, 2005). In essence, Petitioner contends that he should be given credit, on the sentence for violation of supervised release, for the thirty-six days between June 9, 2004, and July 14, 2004.

Respondents answer, first, that the Petition should be dismissed based upon Petitioner's failure to exhaust his administrative remedies and, second, that the sentences imposed under these two different sentencing acts cannot be aggregated and that Petitioner's sentence has been computed correctly.

## II.  ANALYSIS

A.  Exhaustion

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted

all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory

5

construction, because there is no need for an administrative agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).  Here, the pleadings reveal that there is no dispute as to essential facts and the only issue presented is the correct application of law to those facts.  This is a question that would not be aided by requiring Petitioner to exhaust his administrative remedies, and this Court will proceed to determine Petitioner's claims on the merits.

B.   Aggregation of SRA and PLRA Sentences

Federal law governs the calculation of multiple terms of imprisonment as follows:

> Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single aggregate term of imprisonment.

18 U.S.C. § 3584(c).

According to Bureau of Prisons Program Statement 5880.28(m), Sentence Computation Manual (CCCA of 1984), page 1-78S, PLRA sentences shall be aggregated with one another but shall not be aggregated with any other sentences because of the statutory differences between the manner in which a PLRA sentence must be treated in relationship to other sentences with respect to

accrual of good time credits.  Specifically, under the SRA, good time credits may be earned annually by prisoners who have "satisfactorily complied" with institutional disciplinary regulations, and such credits vest annually, at the time they are received.  18 U.S.C. § 3624(b) (repealed).  Under the PLRA, good time credits may be earned annually only by prisoners who display "exemplary compliance" with institutional disciplinary regulations and who have earned, or are making satisfactory progress toward earning, a high school diploma or equivalent degree.  Such credits do not vest until the date the prisoner is released from custody.  18 U.S.C. § 3624(b)(1), (2).  Thus, under the PLRA, good time credits are more difficult to earn and are subject to forfeiture at any time during service of the sentence.  Also, a court may order the revocation of good time credits that have been earned, but have not vested, making more credits subject to such revocation under the PLRA.  28 U.S.C. § 1932.  Thus, the BOP has construed § 3584 as requiring aggregation only of sentences imposed under the same sentencing act.

When examining an agency's construction of a statute, a court must first determine "whether Congress has directly spoken to the precise question at issue."  Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984); Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997).  If Congress has addressed the issue and the legislative intent is unambiguous,

7

the court's inquiry must cease.  See id.  "When a statute leaves a gap for an agency to fill with its rulemaking authority, the agency's regulations must receive 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'"  Stiver, 130 F.3d at 577 (quoting Chevron, 467 U.S. at 844).  If a statute leaves an implicit gap for an agency to fill, the agency's construction must be upheld "if it has chosen 'a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute . . . .'"  Id. (quoting Chevron, 467 U.S. at 845)(other citations omitted).

However, the Court of Appeals for the Third Circuit has held that Bureau of Prisons Program Statements are afforded "considerably less deference" than published regulations, because they are internal guidelines that may be altered at will, and they are not subject to notice and comment before adoption.  See id. at 578 (citing Roussos v. Menifee, 122 F.3d 159 (3d Cir. 1997)); see also Magnin v. Beeler, 110 F.Supp.2d 338, 343 (D.N.J. 2000)(stating that program statements are only accorded "some deference").

The Court of Appeals for the Third Circuit has found that a Bureau of Prisons Program Statement defining "nonviolent offenses" was directly in conflict with a United States statute and provision in the Code of Federal Regulations.  Therefore, the Court of Appeals found that, "[a]lthough the Program Statement

8

the BOP used to deny Roussos' eligibility for a sentence reduction is entitled to "some deference" . . ., it must be rejected where it is inconsistent with the clear language of the statute." Roussos v. Menifee, 122 F.3d 159, 164 (3d Cir. 1997)(citation omitted).

Here, however, Congress has not spoken to the precise question at issue. Section § 3584(c) requires aggregation of sentences "for administrative purposes." This general language does not require aggregation of sentences for purposes of § 3624(b), a statute which describes the eligibility of prisoners to receive good time credit, but does not entitle prisoners to such credit. Aggregation for "administrative purposes" does not directly refer to good time credits.

Further, Congress enacted § 3584(c) in 1984, and it became effective in 1987. Section § 3624 under the SRA was enacted concurrently with § 3584(c), and was amended under the PLRA later. Thus, Congress did not address directly any conflict that developed thereafter between the requirement to aggregate sentences and the later change to the manner in which good time credits are earned and vest. Therefore, there is clearly a "gap" for the Bureau to fill with its rulemaking authority. The Bureau's accommodation of these conflicting policies is entitled to at least "some deference."

This Court finds that the Bureau's policy for dealing with these conflicting statutes is reasonable.  Because of the differences in the eligibility for and vesting of credits under the SRA and the PLRA, the Bureau has determined that it will not aggregate PLRA sentences with non-PLRA sentences for purposes of calculating the sentences and credits.  This interpretation is reasonable, given the conflicts.

Further, the program statement is not in direct conflict with any existing statute or case law.  Indeed, the parties have not directed this Court to any applicable case law, and this Court has located no opinions directly on point.

The program statement also is not arbitrary or capricious.  The Bureau of Prisons is charged with post-sentencing matters such as credits for time served and good time credits.  See United States v. Wilson, 503 U.S. 329, 335 (1992)("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."); 18 U.S.C. § 3621(a).  The program statement allows for the Bureau to administer sentences in a uniform manner where two conflicting sentencing statutes must be applied.  Moreover, Petitioner is eligible to receive good time credits on each sentence pursuant to the governing sentencing act.

Because of conflicting statutes regarding good time credits, the Bureau's determination that PLRA and non-PLRA sentences will not be aggregated is reasonable, and this Court must uphold the agency's interpretive rules, as the Program Statement is to be afforded at least "some deference."

### III.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


                                        **s/ Jerome B. Simandle**
                                        Jerome B. Simandle
                                        United States District Judge

Dated: **May 18, 2005**